2020-2162

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING, (CHANGSHU), INC., CANADIAN SOLAR MANUFACTURING (LUOYANG), INC., CSI SOLAR, POWER (CHINA) INC., CSI-GCL SOLAR MANUFACTURING (YANCHENG) CO., LTD., CSI CELLS CO., LTD., CANADIAN SOLAR (USA), INC., SHANGHAI BYD CO., LTD.,YINGLI GREEN ENERGY HOLDING CO., LTD., BAODING TIANWEI YINGLI NEW ENERGY RESOURCES CO., LTD., TIANJIN YINGLI NEW ENERGY RESOURCES CO., LTD., HENGSHUI YINGLI NEW ENERGY RESOURCES CO., LTD., LIXIAN YINGLI NEW ENERGY RESOURCES CO., LTD., BAODING JIASHENG PHOTOVOLTAIC TECHNOLOGY CO., LTD., BEIJING TIANNENG YINGLI NEW ENERGY RESOURCES CO., LTD., HAINAN YINGLI NEW ENERGY RESOURCES CO., LTD., SHENZHEN YINGLI NEW ENERGY RESOURCES CO., LTD., YINGLI GREEN ENERGY INTERNATIONAL TRADING CO., LTD., YINGLI GREEN ENERGY AMERICAS, INC., YINGLI ENERGY (CHINA) CO., LTD., CHANGZHOU TRINA SOLAR ENERGY CO., LTD., TRINA SOLAR (CHANGZHOU) SCIENCE & TECHNOLOGY CO., LTD., YANCHENG TRINA SOLAR ENERGY TECHNOLOGY CO., LTD., CHANGZHOU TRINA SOLAR YABANG ENERGY CO., LTD., TURPAN TRINA SOLAR ENERGY CO., LTD., HUBEI TRINA SOLAR ENERGY CO., LTD., TRINA SOLAR (U.S.) INC., SOLARWORLD AMERICAS, INC.,

Plaintiffs,

NINGBO QIXIN SOLAR ELECTRICAL APPLIANCE CO., LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade
Case No. 1:17-cv-00173-CRK, Judge Claire R. Kelly

## BRIEF OF DEFENDANT-APPELLEE UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:
BRENDAN S. SASLOW
Senior Attorney
Department of Commerce
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce

JOSHUA E. KURLAND
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 616-0477
Fax: (202) 353-0461
Email: Joshua.E.Kurland@usdoj.gov

June 30, 2022

*Attorneys for Defendant-Appellee*
*United States*

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE..................................................................1

STATEMENT OF FACTS ......................................................................3

I.    Legal Framework For Antidumping Duty Proceedings ..................3

II.   Administrative Proceeding ..........................................................5

III.  Trial Court Decisions And Remand Proceedings............................9

SUMMARY OF ARGUMENT ..............................................................14

ARGUMENT ......................................................................................15

I.    Standard Of Review ..................................................................15

II.   The Trial Court Lawfully Denied Qixin's Motion For Leave To File
      New Factual Information Out Of Time ........................................17

III.  Qixin Failed To Preserve Its Claim Challenging Commerce's Remand
      Determination That Qixin Was Not Eligible For A Separate Rate ..............22

      A.    Qixin Waived All Claims Challenging Its Ineligibility For A
            Separate Rate Because It Did Not File Remand Comments
            Before The Trial Court ...................................................... 23

      B.    Qixin Failed To Exhaust Its Administrative Remedies Regarding
            The Separate Rate Issue Because It Did Not Comment On
            Commerce's Determination During Remand  ...................24

IV.   Qixin's Claim Challenging Commerce's Remand Determination That
      Qixin Was Not Eligible For A Separate Rate Lacks Merit ..........28

      A.    Commerce's Determination That Qixin Did Not Rebut The
            Presumption Of Government Control Is Lawful.................28

B.    Qixin's Arguments That Commerce Should Have Rescinded
      The Administrative Review With Respect To Qixin Lack Merit .......31

CONCLUSION ........................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
 802 F.3d 1339 (Fed. Cir. 2015)............................................................36

*AIMCOR v. United States*,
 141 F.3d 1098 (Fed. Cir. 1998)............................................................27

*Allegheny Ludlum Corp. v. United States*,
 346 F.3d 1368 (Fed. Cir. 2003)............................................................34

*ArcelorMittal USA LLC v. United States*,
 399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) ......................................27

*Axiom Res. Mgmt., Inc. v. United States*,
 564 F.3d 1374 (Fed. Cir. 2009)............................................................18

*BMW of N. Am. LLC v. United States*,
 926 F.3d 1291 (Fed. Cir. 2019)............................................................15

*Boomerang Tube LLC v. United States*,
 856 F.3d 908 (Fed. Cir. 2017)................................................16, 24, 25

*Camp v. Pitts*,
 411 U.S. 138 (1973)..............................................................................18

*Canadian Solar Int'l Ltd.United States*,
 378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019) ..............................2, 9, 26,

*Canadian Solar Int'l Ltd.  v. United States*,
 399 F. Supp 3d 1379 (Ct. Int'l Trade 2019) ...................................*passim*

*Canadian Solar Int'l Ltd. v. United States*,
 415 F. Supp. 3d 1326 (Ct. Int'l Trade 2019) ..................................*passim*

*Canadian Solar Int'l Ltd. v. United States*,
 448 F. Supp. 3d 1333 (Ct. Int'l Trade 2020) ......................................14

*Canadian Solar Int'l Ltd. v. United States,*
  471 F. Supp. 3d 1379 (Ct. Int'l Trade 2020) ......................................14

*Canadian Solar Int'l Ltd. v. United States,*
  532 F. Supp. 3d 1273 (Ct. Int'l Trade 2021) ......................................14

*Canadian Solar Int'l Ltd. v. United States,*
  548 F. Supp. 3d 1373 (Ct. Int'l Trade 2021) ................................14, 25

*China Mfrs. Alliance, LLC v. United States,*
  1 F.4th 1028 (Fed. Cir. 2021) ..........................................*passim*

*Corus Staal BC v. United States,*
  502 F.3d 1370 (Fed. Cir. 2007)........................................ 16, 24, 26-27

*Diamond Sawblades Mfrs. Coalition v. United States,*
  866 F.3d 1304 (Fed. Cir. 2017)........................................*passim*

*Dongtai Peak Honey Indus. Co. v. United States,*
  777 F.3d 1343 (Fed. Cir. 2015)........................................5

*Essar Steel Ltd. v. United States,*
  678 F.3d 1268 (Fed. Cir. 2012)........................................18, 19

*Essar Steel, Ltd. v. United States,*
  753 F.3d 1368 (Fed. Cir. 2014)........................................16

*F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States,*
  216 F.3d 1027 (Fed. Cir. 2000)........................................15

*Hubell Power Sys., Inc. v. United States,*
  884 F. Supp. 2d 1283 (Ct Int'l Trade 2012) ......................................34

*Itochu Bldg. Prods. v. United States,*
  733 F.3d 1140 (Fed. Cir. 2013)........................................25

*Kingdomware Techs., Inc. v. United States,*
  579 U.S. 162 (2016)................................................32

*Meridian Prods., LLC v. United States*,
   No. 13-00246, 2020 WL 1672840 (Ct. Int'l Trade Apr. 6, 2020)..................24, 27

*Michaels Stores, Inc. v. United States*,
   766 F.3d 1388 (Fed. Cir. 2014)........................................................4, 17

*Mittal Steel Point Lisas Ltd. v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008).................................................*passim*

*Nan Ya Plastics Corp. v. United States*,
   810 F.3d 1333 (Fed. Cir. 2016)...............................................................23

*NEXTEEL Co. v. United States*,
   461 F. Supp. 3d 1336 (Ct Int'l Trade 2020) ...................................25, 27

*Prime Time Commerce, LLC v. United States*,
   No. 2021-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022).................25, 26, 27

*Qingdao Sea-Line Trading Co. v. United States*,
   766 F.3d 1378 (Fed. Cir. 2014)................................................................17

*QVD Food Co., Ltd. v. United States*,
   658 F.3d 1318 (Fed. Cir. 2011)........................................................17, 21

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997)................................................................23

*Shell Oil Co. v. United States*,
   896 F.3d 1299 (Fed. Cir. 2018)................................................................16

*Sigma Corp. v. United States*,
   117 F.3d 1401 (Fed. Cir. 1997)..........................................................5, 29

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006).................................................................28

*SolarWorld Americas, Inc. v. United States*,
   962 F.3d 1351 (Fed. Cir. 2020).................................................................14

*Starkey Lab'ys, Inc. v. United States*,
  155 F. Supp. 2d 796 (Ct. Int'l Trade 2001) ..........................................22

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
  298 F.3d 1330 (Fed. Cir. 2002)....................................................19, 21

*Taian Ziyang Food Co. v. United States*,
  918 F. Supp. 2d 1345 (Ct. Int'l Trade 2013) ........................................27

*Tolbert v. Queens Coll.*,
  242 F.3d 58 (2d Cir. 2001)....................................................................28

*U.S. Steel Corp. v. United States*,
  621 F.3d 1351 (Fed. Cir. 2010)...............................................................3

*Union Steel v. United States*,
  713 F.3d 1101 (Fed. Cir. 2013)..............................................................16

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952)...........................................................................25, 27

*Woodford v. Ngo*,
  548 U.S. 81 (2006)................................................................................31

*Yangzhou Bestpak Gifts & Grafts Co. v. United States*
  716 F.3d 1370 (Fed. Cir. 2013).........................................................31, 32

## STATUTES & REGULATIONS

19 U.S.C. § 1516a ...................................................................................17

19 U.S.C. § 1673 ......................................................................................3

19 U.S.C. § 1675 ......................................................................................3

19 U.S.C. § 1677b .....................................................................................3

19 U.S.C. § 1677(18) ................................................................................4

9 U.S.C. § 1677(35) ..................................................................................3

28 U.S.C. § 2637(d) ......................................................................16, 24

19 C.F.R. § 351.102 .............................................................................17

19 C.F.R. § 351.213 .............................................................................32

19 C.F.R. § 351.301 .............................................................................17

19 C.F.R. § 351.302 .........................................................................20, 22

## ADMINISTRATIVE DETERMINATIONS

*Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam,*
    80 Fed. Reg. 55,328, 55,331 (Dep't of Commerce Sept. 15, 2015) ..............30, 36

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
    From the People's Republic of China: Amended Final Determination of Sales at
    Less Than Fair Value, and Antidumping Duty Order,*
    77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012)..................................5, 9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
    From the People's Republic of China,*
    81 Fed. Reg. 93,888 (Dep't of Commerce Dec. 22, 2016)....................................8

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
    From the People's Republic of China,*
    82 Fed. Reg. 29,033 (Dep't of Commerce June 27, 2017)................................ 8-9

*Crystalline Silicon Photovoltaic Cells. Whether Or Not Assembled Into Modules
    from the People's Republic of China,*
    82 Fed. Reg. 40,560 (Dep't of Commerce Aug. 25, 2017) ...................................9

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    81 Fed. Reg. 6,832, 6,834 (Dep't of Commerce Feb. 9, 2016) ....................*passim*

*Opportunity To Request Administrative Review*,
    80 Fed. Reg. 75,058, 75,059 (Dep't of Commerce Dec. 1, 2015)...................... 5-6

*Stainless Steel Sheet and Strip Coils from Taiwan*,
    75 Fed. Reg. 76,700 (Dep't of Commerce Dec. 9, 2010)....................................33

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, counsel for defendant-appellee, the United States, is aware that *Canadian Solar Int'l Ltd. v. United States*, No. 2020-2161 (Fed. Cir. Jan. 21, 2022), concerning the same administrative proceeding, was previously before this Court.  Upon receiving the appellants' motion to deconsolidate the two appeals and to voluntarily dismiss Case No. 2020-2161 pursuant to Federal Rule of Appellate Procedure 42(b) in that action, this Court de-consolidated and dismissed case number 2020-2161 from this action.  Counsel is unaware of any other case pending in this or any other court or agency that will directly affect, or be affected by, the Court's decision in this appeal.

## STATEMENT OF THE ISSUES

1.      Whether the Court of International Trade lawfully denied the motion filed by appellant Ningbo Qixin Solar Electrical Appliance Co., Ltd (Qixin) for leave to file new factual information out of time, because Qixin failed to timely provide the new factual information during the remand proceeding at issue.

2.      Whether Qixin waived all arguments challenging the remand determination because it failed to contest the Department of Commerce's final remand redetermination before the trial court.

3.      Whether Qixin failed to exhaust its administrative remedies regarding its challenge to Commerce's remand redetermination because it failed to contest the determination before Commerce.

4.      Whether Commerce's determination that Qixin failed to rebut the presumption of Chinese government control, and was ineligible for a separate rate, because it failed to establish that it made an entry of subject merchandise into the United States during the period of review is lawful.

## STATEMENT OF THE CASE

This appeal concerns Commerce's third administrative review of the agency's antidumping duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules (solar cells), from China (which covers the period from December 1, 2014 to November 30, 2015).  Qixin, a foreign exporter

of subject merchandise, challenges the United States Court of International Trade's final judgment in *Canadian Solar Int'l Ltd. v. United States*, 548 F. Supp. 3d 1373 (Ct. Int'l Trade 2021) (*Canadian Solar VII*), which incorporates multiple prior decisions, including *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019) (*Canadian Solar I*) (granting Commerce's request for a voluntary remand to reconsider Qixin's separate rate application); *Canadian Solar Int'l Ltd. v. United States*, 399 F. Supp 3d 1379 (Ct. Int'l Trade 2019) (*Canadian Solar II*) (denying Qixin's motion to file new factual information out of time relating to Commerce's remand redetermination); and *Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326 (Ct. Int'l Trade 2019) (*Canadian Solar III*) (sustaining remand determination that Qixin was ineligible for separate rate).

Specifically, Qixin alleges that: (1) the trial court should have granted Qixin's motion for leave to file new factual information out of time, and that (2) Commerce's determination that Qixin failed to rebut the presumption of government control because it did not establish that it had any entries of subject merchandise during the period of review is contrary to law. Qixin also asserts, alternatively, that Commerce was required to rescind the review, allegedly because it determined that Qixin made no entries/sales during the review period.

## STATEMENT OF FACTS

**I.     Legal Framework For Antidumping Duty Proceedings**

The antidumping statute is a remedial law authorizing Commerce to provide relief to domestic manufacturers by imposing duties on imports of comparable products that are sold in the United States at less than fair value, when there is also injury to the domestic industry.  19 U.S.C. § 1673.  Once Commerce investigates a dumping allegation and issues an order, the agency, if requested, conducts annual reviews to determine the amount of dumping and duties owed for the review period.  19 U.S.C. §§ 1675(a)(1)(B), (2)(A).  To do so, Commerce calculates a "dumping margin" for each entry of merchandise subject to review.  19 U.S.C. § 1675(a)(2)(A)(ii).  A dumping margin is the amount by which the "normal value" (home market price) exceeds the United States export price for the merchandise.  *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010) (citing 19 U.S.C. § 1677(35)(A)).  Generally, if home market prices are lower compared to export prices, the analysis results in a lower dumping margin; higher-priced home market sales relative to exports result in higher dumping margins.

"Normal value," in most circumstances, is the price at which a foreign like product is first sold (or, in the absence of a sale, offered) for consumption in the exporting country, in the usual commercial quantities and ordinary course of trade.  19 U.S.C. § 1677b(a)(1).  Specific procedures apply, however, when Commerce

3

imposes antidumping duties in proceedings involving countries with non-market

economies (NMEs).  A non-market economy country is "any foreign country that

the administering authority determines does not operate on market principles of

cost or pricing structures, so that sales of merchandise in such country do not

reflect the fair value of the merchandise."  19 U.S.C. § 1677(18).  Commerce

considers China to be a non-market economy country.

In antidumping duty proceedings involving non-market economy countries,

such as China, Commerce applies a rebuttable presumption that all companies

within the country are subject to government control and therefore should be

assessed a single, country-wide antidumping duty rate.  *E.g.*, *China Mfrs. Alliance,*

*LLC v. United States*, 1 F.4th 1028, 1030-31 (Fed. Cir. 2021); *Michaels Stores, Inc.*

*v. United States*, 766 F.3d 1388, 1392 (Fed. Cir. 2014); *Sigma Corp. v. United*

*States*, 117 F.3d 1401, 1405-06 (Fed. Cir. 1997).  Under this presumption, an

exporter receives the NME country-wide rate unless it demonstrates an absence of

government control, both in law (*de jure*) and in fact (*de facto*), with respect to

exports.  *E.g.*, *Diamond Sawblades Mfrs. Coalition v. United States*, 866 F.3d

1304, 1310-11 (Fed. Cir. 2017) (citations omitted).  The burden to rebut the

presumption of government control rests with the exporter.  *Id.*

Typically, when Commerce determines that an exporter in a non-market

economy has failed to demonstrate independence from state control, Commerce

declines to conduct further inquiry into the exporter's individual business practices and applies the NME country-wide rate. *E.g.*, *China Mfrs. Alliance*, 1 F.4th at 1039; *Sigma*, 117 F.3d at 1405-06; *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1350 (Fed. Cir. 2015) ("If a respondent fails to establish its independence, Commerce relies upon the presumption of government control and applies the country-wide rate to that respondent."). Indeed, Commerce's initiation notice in this case explained that it is Commerce's "policy to assign all exporters of merchandise subject to an administrative review in an NME country this single rate *unless* an exporter can demonstrate that it is sufficiently independent so as to be entitled to a separate rate." *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 81 Fed. Reg. 6,832, 6,834 (Dep't of Commerce Feb. 9, 2016) (*Initiation Notice*) (emphasis added).

## II.  <u>Administrative Proceeding</u>

Commerce has issued an antidumping duty order covering solar cells from China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012). In December 2015, Commerce notified interested parties of their opportunity to request an annual administrative review of the order. *Opportunity To Request Administrative Review*, 80 Fed. Reg. 75,058,

75,059 (Dep't of Commerce Dec. 1, 2015). Numerous parties, including Qixin,

filed timely administrative review requests. *E.g.*, Appx103-105 (Qixin's Review

Request). In February 2016, Commerce published its notice of initiation of an

administrative review covering the period December 1, 2014 to November 30,

2015. *Initiation Notice*, 81 Fed. Reg. at 6,835.

Commerce notified parties that, to qualify for separate rate status, they must

complete and submit a separate rate application or certification. *Id.* at 6,834. The

separate rate application instructions state that "an exporter cannot obtain a

separate rate without providing {Commerce} the relevant U.S. Customs 7501

Entry Summary for a suspended entry{.}" Appx118. Qixin timely filed a separate

rate application in March 2016. Appx106-136.

In June 2016, Commerce issued a supplemental questionnaire to Qixin.

Appx559-561. In the supplemental questionnaire, Commerce informed Qixin that

areas of its separate rate application required further information. Appx559.

Specifically, Commerce notified Qixin that "{t}he sale {Qixin} provided as proof

of a period of review sale does not appear to be a sale of subject merchandise."

Appx561. Commerce requested that Qixin provide documentation demonstrating

that it made such a sale that entered during the review period. *Id.*

Qixin responded to Commerce's supplemental questionnaire in July 2016.

Appx562-584. Qixin maintained that the sale it provided as proof of a reviewable

sale during the review period involved subject merchandise.  Appx568.  But it also stated that it had become aware that the case number in its entry summary was incorrect upon receiving Commerce's supplemental questionnaire.  *Id.*  Qixin indicated that it had subsequently asked its importer to correct the case number and pledged to submit the corrected case number when it became available.  *Id.*  Qixin also provided email correspondence with its importer discussing efforts to correct the entry summary error.  Appx568-584.

Commerce issued a second supplemental questionnaire to Qixin in November 2016, explaining that the sale Qixin had provided did not appear to be a sale of subject merchandise and restating its request that Qixin provide sales documentation demonstrating that it made a sale of subject merchandise during the period of review.  Appx585-587.  On November 20, 2016, Qixin responded to Commerce's second supplemental questionnaire.  Appx588-600.  Qixin stated again that the sale it had identified was a sale of subject merchandise during the review period, and that only the case number on the entry summary was incorrect due to a mistake by the importer.  Appx595.  Qixin also reiterated that it had asked the importer to correct the case number, and that the importer had applied to do so with U.S. Customs and Border Protection (CBP).  *Id.*  To support this assertion, Qixin submitted an affidavit from a Qixin official and a copy of the protest its importer had filed with CBP to correct the alleged error.  Appx595-600.

In December 2016, Commerce issued its preliminary results. *Crystalline*

*Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*

*People's Republic of China*, 81 Fed. Reg. 93,888 (Dep't of Commerce Dec. 22,

2016), and accompanying Preliminary Decision Memorandum (Appx613-644). In

doing so, Commerce did not include Qixin among the companies eligible to

receive separate rates. *Id.* at 93,890. Commerce did not directly discuss Qixin's

eligibility for a separate rate (or lack thereof), but it provided Qixin and other

interested parties an opportunity to comment on the preliminary results and to

request a hearing. *Id.* at 93,890-91.

Qixin submitted a case brief in January 2017. Appx645-660. In its case

brief, Qixin argued that: (1) Commerce should include Qixin in its list of

companies granted a separate rate; (2) if Commerce determined not to review

Qixin, it should explain its basis for that determination; (3) if Commerce intended

to rescind its review of Qixin, Commerce should state that intention and issue

liquidation instructions that Qixin's merchandise be liquidated at a rate assigned to

Qixin in a previous segment of the proceeding (while also identifying the relevant

importer, as set forth in the record). *Id.*

In June 2017, Commerce issued its final results, *Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's*

*Republic of China*, 82 Fed. Reg. 29,033 (Dep't of Commerce June 27, 2017) (final

results), and accompanying Issues and Decision Memorandum (IDM) (Appx672-764). In the final results, Commerce determined that Qixin had failed to rebut the presumption of government control because it had failed to provide evidence of any single entry of subject merchandise during the period of review. Appx761-763. Commerce also explained that Qixin's failure to support its separate rate application resulted in Qixin being subject to the China-wide rate, and that it was not rescinding its review of Qixin. *Id.*[1]

## III.   Trial Court Decisions And Remand Proceedings

Qixin challenged Commerce's determination not to assign Qixin a separate rate before the Court of International Trade. We initially requested a remand to Commerce because Qixin "had no opportunity to respond to Commerce's denial of its separate rate application and, likewise, Commerce lacked the opportunity to respond to the arguments Qixin may have made, had it had the opportunity." *Canadian Solar I*, 378 F. Supp. 3d at 1324-25 (citing Appx834-935). The trial court granted our motion and ordered Commerce to reconsider its decision to deny Qixin a separate rate. *Id.* at 1325. The trial court agreed that Commerce had deprived Qixin of the opportunity to respond substantively to Commerce's decision to deny its separate rate application. *Id.*

---

[1]   Commerce issued amended final results that did not change its determination with respect to Qixin. *Crystalline Silicon Photovoltaic Cells. Whether Or Not Assembled Into Modules from the People's Republic of China*, 82 Fed. Reg. 40,560 (Dep't of Commerce Aug. 25, 2017).

On remand, Commerce reopened the record and issued a supplemental questionnaire to Qixin.  Appx899-900.  This questionnaire provided Qixin an opportunity to explain its position, to document the current status of its importer's protest, and to provide entry packages filed with CBP and other documentation demonstrating receipt of payment indicating whether the relevant sale consisted of subject merchandise.  *Id.*

Qixin responded to Commerce's supplemental questionnaire on May 9, 2010, stating:

> Ningbo Qixin has been unable to obtain the information requested by the Department of Commerce and thus is supplying this letter in lieu of a substantive response. Ningbo Qixin notes that all of the information (including information such as the status of the protest) is in the possession of the United States government and official copies of all of these documents can be readily obtained from CBP.  As this submission contains no factual information, no certifications of factual accuracy are required and none are provided.

Appx901-903.

In June 2019, Commerce issued draft remand results and provided interested parties an opportunity to comment.  Appx904-930.  Commerce explained that, although it had inadvertently failed to address Qixin's separate rate status in its preliminary results, it had explained its basis for denying Qixin's separate rate application in the final results.  Appx924-925.  Specifically, Commerce explained that "it was not enough that Qixin's importer had attempted to correct the alleged

mistake with CBP, and that because Qixin had failed to provide conclusive

evidence it had a sale or shipment of subject merchandise (*i.e.*, evidence of a

suspended entry under the solar cells order case number), Qixin had not satisfied

the requirements for obtaining a separate rate." *Id.* (citing Appx762). Commerce

further observed that the burden of creating an accurate record rests with Qixin and

that Qixin did not provide any information that Commerce had requested to

demonstrate that it had an entry of subject merchandise during the period of

review. Appx925-926. For this reason, Commerce found that Qixin failed to

demonstrate that it was eligible for a separate rate. Appx927. Qixin did not submit

comments on the draft remand results.

Following comments by other parties on the draft remand results (relating to

issues other than Qixin's separate rate request), and notwithstanding Qixin's lack

of participation, Commerce in July 2019 issued its final remand redetermination.

Appx931-966. Regarding Qixin's separate rate status, Commerce continued to

find that Qixin was ineligible for a separate rate. Appx959-963.

After Commerce filed its final remand results with the trial court—and

notwithstanding its failure to contest the draft remand results—Qixin moved for

leave to file new factual information, out of time, seeking to submit to the trial

court additional factual information allegedly affecting Commerce's separate rate

determination for Qixin. Appx967-975. Qixin claimed it "was not aware that its

11

counsel had submitted {the May 9, 2019} response to the Department's remand

supplemental questionnaire." Appx968. In addition, Qixin asserted that its

employees took "unofficial extended" Chinese May Day holidays, from May 1,

2019 to May 4, 2019, impeding its ability to respond to Commerce's remand

questionnaire. Appx968-969. Qixin also stated that, although Commerce had

provided until May 9, 2019 for a response, "{m}iscommunication between Qixin

and its US counsel and local Chinese counsel resulted in Qixin's misunderstanding

that the deadline for the supplemental questionnaire was Monday, May 6."

Appx968. Alleging inability to receive assistance from its United States importers

during the weekend, Qixin claimed that it had "determined that it was unable to

respond to the Department's supplemental questionnaire response." Appx969.

Qixin requested that the trial court direct Commerce to consider two exhibits

containing new factual information, should it remand Commerce's determination a

second time. Appx969-970. First, Qixin provided an update on its United States

importer's protest, indicating that CBP had denied the protest and liquidated the

relevant entry as not an entry of subject merchandise from Qixin.[2] Appx970.

Second, Qixin sought to provide entry package documentation relating to five

entries of purported subject merchandise, through a different United States

importer, during the review period. *Id.*

---

[2] Qixin also stated that its importer had failed to provide it with a copy of
CBP's protest denial determination. Appx970.

12

In October 2019, the trial court denied Qixin's motion. *Canadian Solar II*, 399 F. Supp. 3d at 1383. First, the court held that it could not grant Qixin's request to file new factual information because the court's review of the remand results "only extends to the same world of materials that Commerce reviewed." *Id.* Second, the court explained that Qixin's request to submit new factual information to the court "misapprehends the judicial review and administrative processes" because Qixin "bore the burden to populate the remand record with materials that would support its separate rate application." *Id.* Finally, the court observed that Qixin could have requested additional time to submit factual information before Commerce during the remand proceeding, but it had failed to do so. *Id.* The court thus concluded that Qixin "cannot circumvent the administrative process through judicial review" and denied Qixin's request. *Id.*

Subsequently, the trial court addressed Commerce's remand results in a separate decision. *Canadian Solar III*, 415 F. Supp. 3d 1326. On the merits of Commerce's remand redetermination with respect to Qixin, and in light of the facts that (1) "Qixin failed to provide Commerce with the information it requested" and (2) "no party," including Qixin, had filed trial court comments "challeng{ing}" Commerce's redetermination on this matter," the trial court sustained Commerce's determination with respect to Qixin. *Id.* at 1335.

Following subsequent remands and decisions on issues unrelated to this appeal, the court entered final judgment.[3]  This appeal, which Qixin had filed after the trial court originally entered judgment in June 2020 and was held in abeyance while the litigation continued, proceeded once the trial court litigation concluded and final judgment entered.

## SUMMARY OF ARGUMENT

This Court should affirm the judgment below because the trial court correctly denied Qixin's motion to file new factual information out of time, Qixin both waived and failed to exhaust its challenge to Commerce's denial of a separate rate by declining to contest Commerce's remand results, and Qixin's arguments otherwise lack merit.  Qixin failed—during both the administrative review and on remand—to provide Commerce with information required for Qixin to demonstrate its entitlement to a separate rate and rebut the otherwise applicable presumption of

---

[3]  Commerce filed its second remand redetermination in February 2020, which the trial court sustained in June 2020 and entered judgment.  *Canadian Solar Int'l Ltd. v. United States*, 448 F. Supp. 3d 1333 (Ct. Int'l Trade 2020).  Following this Court's decision in *SolarWorld Americas, Inc. v. United States*, 962 F.3d 1351 (Fed. Cir. 2020), however, in September 2020 the trial court vacated its judgment and remanded a matter to Commerce unrelated to Qixin, *Canadian Solar Int'l Ltd. v. United States*, 471 F. Supp. 3d 1379 (Ct. Int'l Trade 2020).  Commerce filed a third remand redetermination on that issue in January 2021, which the trial court again remanded.  *Canadian Solar Int'l Ltd. v. United States*, 532 F. Supp. 3d 1273 (Ct. Int'l Trade 2021).  Commerce then filed a fourth remand redetermination in September 2021, which the trial court sustained.  *Canadian Solar Int'l Ltd. v. United States*, 548 F. Supp. 3d 1373 (Ct. Int'l Trade 2021).

government control.  Qixin then failed, following remand, to contest Commerce's corresponding determination that Qixin failed to demonstrate its entitlement to a separate rate, and was thus subject to the presumption of government control.  In these circumstances, the trial court did not abuse its discretion by denying Qixin's request to submit factual information for the first time at the trial court.  Similarly, it would be inappropriate for this Court to review Qixin's claims substantively when it failed to pursue them below.  In any event, Commerce also did not abuse its discretion in declining to rescind the administrative review (which would have benefitted Qixin) upon determining that Qixin had failed to identify a sale to support a separate rate, rather than applying the NME country-wide rate to Qixin.  Commerce's determination should thus be affirmed.

## ARGUMENT

### I.    Standard Of Review

This court reviews the Court of International Trade's evidentiary decisions, including those concerning waiver for failure to timely present evidence or to raise an issue, for abuse of discretion.  *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1031 (Fed. Cir. 2000); *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1300 (Fed. Cir. 2019).  "A court abuses its discretion when (1) its decision is clearly unreasonable, arbitrary or fanciful; (2) the decision is based upon an erroneous construction of the law; (3) its factual findings are

clearly erroneous; or (4) the record contains no evidence upon which the {trial}

court could have rationally based its decision." *Shell Oil Co. v. United States*, 896

F.3d 1299, 1307 (Fed. Cir. 2018) (citation and internal quotation marks omitted).

A similar standard applies to Court of International Trade decisions under

the statutory directive that it "shall, where appropriate, require the exhaustion of

administrative remedies." 28 U.S.C. § 2637(d). Like evidentiary decisions, this

Court reviews such administrative exhaustion decisions for "abuse of discretion."

*Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017); *Essar*

*Steel, Ltd. v. United States*, 753 F.3d 1368, 1374-75 (Fed. Cir. 2014); *see also*

*Corus Staal BC v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (noting that

exhaustion requirement is "explicitly imposed by the agency as a prerequisite to

judicial review"). The administrative exhaustion requirement applies equally to

remand proceedings. *See Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d

1375, 1383-84 (Fed. Cir. 2008) (holding that party failed to exhaust administrative

remedies by not raising issue in comments on draft remand results).

With respect to legal and factual issues in Commerce's determination, this

Court applies anew "the same standard used by {the Court of International Trade}

in its consideration of Commerce's determination." *Union Steel v. United States*,

713 F.3d 1101, 1106 (Fed. Cir. 2013) (citations omitted). Thus, although the Court

recognizes that "the Court of International Trade has unique and specialized

expertise in trade law," it reviews that court's decision *de novo* and will uphold

Commerce's determination unless it is "unsupported by substantial evidence . . . or

otherwise not in accordance with law." *Id.*; 19 U.S.C. § 1516a(b)(1)(B)(i).

## II.    The Trial Court Lawfully Denied Qixin's Motion For Leave To File New Factual Information Out Of Time

The trial court lawfully exercised its discretion to deny Qixin's motion for

leave to file new factual information out of time because Qixin failed to timely

provide the information to Commerce in the first instance.

Judicial review of a remand redetermination is limited to the record before

Commerce in the segment of the proceeding at issue.  19 U.S.C. § 1516a(b)(2)(A);

*see also Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1385

(Fed. Cir. 2014); *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324-25

(Fed. Cir. 2011).  Likewise, "{j}udicial review of a remand redetermination is

based on the administrative record of the proceeding." *Canadian Solar II*, 399 F.

Supp. 3d at 1382.  The administrative record includes "a copy of all information

presented to or obtained by {Commerce} during the course of the administrative

proceeding."  19 U.S.C. § 1516a(b)(2)(A)(i).  Commerce's regulations relatedly

define factual information, 19 C.F.R. § 351.102(b)(21), and establish deadlines for

providing such information to Commerce, 19 C.F.R. § 351.301.

The Supreme Court has explained that "the focal point for judicial review

should be the administrative record already in existence, not some new record

made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973);

*Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009).

"The purpose of limiting review to the record actually before the agency is to

guard against courts using new evidence to 'convert the 'arbitrary and capricious'

standard into effectively de novo review." *Axiom*, 564 F.3d at 1380 (citation

omitted). Limiting review to the agency record also furthers important efficiency

and finality considerations. *See Essar Steel Ltd. v. United States*, 678 F.3d 1268,

1277 (Fed. Cir. 2012) ("To allow constant reopening and supplementation of the

record would lead to inefficiency and delay in finality.").

    Supplementation of the record is thus limited to cases in which "the

omission of extra-record evidence precludes effective judicial review." *Axiom*,

564 F.3d at 1380 (citation omitted); *see also* Qixin Br. 26 (acknowledging same).

In *Axiom*, for example, this Court held that the trial court abused its discretion by

adding documents to the record without first evaluating whether the record was

sufficient to permit meaningful judicial review. 564 F.3d at 1380. Conversely,

record supplementation may be allowed in limited circumstances such as when the

record was tainted by fraud, or the underlying agency decision was based on

inaccurate data that the agency generating the data indicates are incorrect. *See*

*Essar Steel*, 678 F.3d at 1277. Neither circumstance exists in this case.

As a result, the trial court correctly held that omitting the untimely information that Qixin proffered did not preclude the court's consideration of Commerce's remand results or cause the record to be incomplete.  *See Canadian Solar II*, 399 F. Supp. 3d at 1382-83 ("Plaintiff-Intervenor does not allege that the omission of certain information precludes the court's consideration of the Remand Results or that the record is incomplete.").  Further, the trial court recognized that Qixin bore the burden to place materials on the remand record that would support its separate rate application, including information responsive to Commerce's supplemental questionnaire on remand.  *See id.* at 1383 (citing *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1336 (Fed. Cir. 2002)).  Indeed, this Court has held that it was *error* for the Court of International Trade to remand an issue to Commerce to reconsider untimely information that a party had failed to place on the record of the proceeding and that only came to light subsequent to Commerce's determination.  *See Essar Steel,* 678 F.3d at 1274-79.

The trial court also observed that Qixin had acknowledged that it did not request an extension from Commerce to submit the information, and held that Qixin could not, after the fact, "circumvent the administrative process through judicial review." *Canadian Solar II*, 399 F. Supp. 3d at 1383.  Consequently, the trial court did not abuse its discretion by denying Qixin's motion for leave to file new factual information out of time.

Qixin's contrary arguments lack support. Rather than challenging the trial court's decision directly, Qixin alleges that this Court should simply reconsider the trial court's decision based on extenuating circumstances. *See* Qixin Br. 21-27. First, Qixin contends that it faced timing difficulties because the time period for it to respond to Commerce's supplemental remand questionnaire overlapped with the Chinese May Day holiday, and because miscommunication occurred between Qixin and its counsel. *See id.* at 24. But Qixin neither conveyed this information to Commerce on remand, nor sought an extension in light of these circumstances (despite acknowledging that it could and should have done so). *See id.* at 26.

Commerce issued Qixin a supplemental remand questionnaire on May 2, 2019, with a May 9, 2019 response deadline. Appx899-900. Qixin timely responded on May 9, 2019—declining to provide the information that Commerce had requested. Appx901-903; *see also* Qixin Br. 21 (acknowledging that Qixin ultimately submitted information "well past the deadlines set by the Department in remand proceeding").

Pursuant to 19 C.F.R. § 351.302, parties may request extensions of time from Commerce *before* the applicable time limit expires. However, Qixin did not request an extension or notify Commerce that it was having trouble obtaining the requested information. To the contrary, it responded and declined to provide the information. Under these circumstances, based on Qixin's failure to provide the

information and subsequent failure to comment on Commerce's draft remand results, Commerce lawfully completed its remand proceeding and determined that Qixin was not eligible for a separate rate.  Appx931, Appx959-964.

Qixin further argues that the trial court should have accepted the untimely new information because Qixin is not the importer of record for its United States entries, and thus it needed to contact its United States customers for the CBP entry summary forms (which ostensibly took additional time).  *See* Qixin Br. 24-25. Qixin also claims that Commerce could quickly collect relevant data from CBP to confirm the accuracy and reliability of Qixin's documents.  *See id.* at 27.

As we explained above, however, if Qixin was having trouble obtaining the information, it was incumbent upon Qixin to notify Commerce and request an extension of time.  Instead, Qixin responded and declined to provide the requested information without an explanation.  It is well-established that the burden is on the interested parties—not Commerce—to create an administrative record.  *See QVD Food*, 658 F.3d at 1324; *Ta Chen*, 298 F.3d at 1336.  Qixin failed to do so, and this resulted in Commerce's determination that Qixin is not eligible for a separate rate.

Qixin next contends that one week was not sufficient time to prepare and submit a response to Commerce's supplemental remand questionnaire.  *See* Qixin Br. 25.  Yet Qixin did respond timely and declined to provide the requested

21

information.  At no point did Qixin request additional time from Commerce to obtain information.  *See* 19 C.F.R. § 351.302 (extension of time procedures).

Finally, Qixin argues that the trial court's denial of its motion was improper because Qixin took immediate steps to find new counsel once it learned about Commerce's final remand results from one of its importers.  *See* Qixin Br. 26-27. Allegations of problems with counsel, however, do not excuse Qixin's failure to timely provide the requested information.  *Cf. Starkey Lab'ys, Inc. v. United States*, 155 F. Supp. 2d 796, 800 (Ct. Int'l Trade 2001) ("plaintiff bears responsibility to its prior attorney's conduct").  And as Qixin acknowledges, Qixin Br. 21, 26, it failed to follow Commerce's regulations regarding providing factual information and requests for extensions.

Thus, notwithstanding Qixin's request for this Court to hold that the trial court abused its discretion in denying Qixin's motion as a result of extenuating circumstances "beyond Qixin's control," Qixin Br. 27, the Court should hold that the trial court did not abuse its discretion and lawfully denied Qixin's motion for leave to file new factual information out of time.

## III.   Qixin Failed To Preserve Its Claim Challenging Commerce's Remand Determination That Qixin Was Not Eligible For A Separate Rate

Qixin also argues that Commerce's determination that Qixin was ineligible for a separate rate should be overturned.  *See* Qixin Br. 28-36.  We discuss below why Commerce lawfully determined that Qixin was ineligible for a separate rate.

22

This Court should not reach that issue substantively, however, because Qixin failed to preserve it both by: (a) failing to file comments on Commerce's remand results before the trial court, thereby waiving the claim, and (b) failing to exhaust its administrative remedies through its failure to file comments on Commerce's draft remand results during the remand proceedings.

### A.    Qixin Waived All Claims Challenging Its Ineligibility For A Separate Rate Because It Did Not File Remand Comments Before The Trial Court

Qixin waived its claim challenging its separate rate ineligibility because it did not file any comments on Commerce's remand results before the trial court. "With a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a party's new theories, lodged first on appeal." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). Claims never raised before Commerce and the trial court are generally deemed waived. *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1350 (Fed. Cir. 2016) (holding that contentions based on statistical methodologies that were never raised by party in comments on Commerce's draft remand, opening brief, remand comments, or reply comments before the Court of International Trade were waived).

Qixin neither commented on Commerce's draft remand results during the remand proceeding, nor filed a brief commenting on Commerce's final remand results before the trial court. *See Canadian Solar III*, 415 F. Supp. 3d at 1335

(observing that no party challenged Commerce's remand determination regarding Qixin).[4]  Because parties must develop their claims before the trial court and cannot raise issues for the first time on appeal, the claim Qixin now raises with respect to its separate rate eligibility has been waived.  Accordingly, the Court should decline to entertain this issue on appeal.

### B.    Qixin Failed To Exhaust Its Administrative Remedies Regarding The Separate Rate Issue Because It Did Not Comment On Commerce's Determination During Remand

Qixin also failed to exhaust its administrative remedies with respect to its claim challenging its separate rate ineligibility by failing to file comments during Commerce's remand determination.

Pursuant to 28 U.S.C. § 2637(d), the Court of International Trade "shall, where appropriate, require the exhaustion of administrative remedies."  *Boomerang Tube*, 856 F.3d at 912.  Courts take "a 'strict view' of the requirement that parties exhaust their administrative remedies . . . in trade cases."  *Corus Staal*, 502 F.3d at 1379 ("{A}bsent a strong contrary reason, the court should insist that parties

---

[4]  Although Qixin raised an argument during pre-remand briefing that Commerce should have rescinded its review of Qixin when it determined that Qixin did not have any entries of subject merchandise during the review period, Appx780-781, Qixin did not raise the argument in a post-remand brief before the trial court because it did not file one.  Qixin's pre-remand filing is insufficient because parties are required to preserve arguments by filing comments on the remand results.  *See, e.g.*, *Meridian Prods., LLC v. United States*, No. 13-00246, 2020 WL 1672840, at *2 (Ct. Int'l Trade Apr. 6, 2020) (parties who did not submit comments objecting to remand waived objections to remand redetermination).

exhaust their remedies before the pertinent administrative agencies."); *see also Boomerang Tube*, 856 F.3d at 912 (quoting *Corus Staal*).

"Simple fairness," moreover, "requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice*." *Mittal Steel*, 548 F.3d at 1383-84 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis added by this Court)). Thus, under the exhaustion doctrine, parties are procedurally required to raise issues before Commerce at the time that Commerce is addressing them. *See id.* (requiring exhaustion when party failed to object to remand); *Prime Time Commerce, LLC v. United States*, No. 2021-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022) (unpublished) (same); *NEXTEEL Co. v. United States*, 461 F. Supp. 3d 1336, 1344 (Ct Int'l Trade 2020) (holding that party failed to exhaust administrative remedies when it received an opportunity to raise issue on remand and failed to do so).

The Court has recognized limited exceptions to the exhaustion requirement, including instances in which: (1) raising the issue at the administrative level would have been futile and (2) the issue is a pure question of law that does not require further factual development or the exercise of agency discretion. *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013). None of these

exceptions apply here.  *Cf. Prime Time*, 2022 WL 2313968, at *4-5 (rejecting

futility argument in similar circumstances).

Qixin undoubtedly failed to exhaust its administrative remedies because it

did not comment at all on Commerce's draft remand results, despite the fact that

Commerce had requested a remand specifically to reconsider Qixin's separate rate

eligibility.  *See Mittal Steel*, 548 F.3d at 1383-84 (requiring exhaustion when party

failed to object to remand); *see also Canadian Solar I*, 378 F. Supp. 3d at 1324-25

(granting voluntary remand regarding Qixin's separate rate eligibility).  During the

remand, Commerce reopened the record and issued Qixin a questionnaire seeking

factual information pertaining to the status of Qixin's entries during the period of

review (to which Qixin responded by declining to provide the information).  *See*

Appx899-900; Appx901-903.  Then, upon issuing the draft remand results—and

consistent with its usual practice—Commerce provided Qixin and other interested

parties an opportunity to comment on Commerce's separate rate determination.

*See* Appx927-928.  Qixin declined to raise any arguments before Commerce,

including its current claim on appeal that Commerce should have rescinded the

review with respect to Qixin if it could not identify a relevant sale.

By failing to challenge Commerce's remand results in any way, Qixin

deprived Commerce of the opportunity to address Qixin's arguments—that is

precisely why Congress and the courts require exhaustion.  *See Corus Staal*, 502

F.3d at 1379-80 (describing policies underlying exhaustion doctrine); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (exhaustion requirements "give the agency a fair and full opportunity to adjudicate {parties'} claims").

Moreover, this Court and the Court of International Trade have a long history of requiring exhaustion during remand proceedings. *See*, *e.g.*, *Mittal Steel*, 548 F.3d at 1383-84; *Prime Time*, 2022 WL 2313968, at *5; *AIMCOR v. United States*, 141 F.3d 1098, 1111-12 (Fed. Cir. 1998) (declining to entertain argument not exhausted on remand); *ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271, 1282-83 (Ct. Int'l Trade 2019) (same); *NEXTEEL*, 461 F. Supp. 3d at 1344 (same); *Meridian Prods.*, 2020 WL 1672840, at *2 (parties cannot challenge uncontested remand results); *Taian Ziyang Food Co. v. United States*, 918 F. Supp. 2d 1345, 1361 (Ct. Int'l Trade 2013) ("The prescribed avenue for challenging remand results requires that a party first file comments on the draft results at the administrative level, setting forth the party's objections.") (citations omitted).

Of particular note, this Court in *Yangzhou Bestpak Gifts & Grafts Co. v. United States* affirmed the trial court's holding that a separate rate applicant had failed to exhaust its administrative remedies when it raised an argument for the first time before the trial court, following remand, in connection with its separate rate application. *See* 716 F.3d 1370, 1380-81 (Fed. Cir. 2013). The Court held that the separate rate applicant had other opportunities to raise the issue before

Commerce, such as in its submissions during the remand proceeding. *See id.* at 1381. As in *Yangzhou Bestpak*, Qixin failed to avail itself of the opportunity on remand to argue that Commerce should have assigned Qixin a separate rate or rescinded the review if it determined that Qixin had no entries. The Court should likewise require exhaustion in this case and affirm the judgment below.[5]

## IV.    Qixin's Claim Challenging Commerce's Remand Determination That Qixin Was Not Eligible For A Separate Rate Lacks Merit

Even if Qixin had preserved its claim that Commerce should have assigned Qixin a separate rate in the review, either by accepting that Qixin had a relevant sale or by rescinding the review with respect to Qixin, the claim lacks merit. There is no basis for Qixin to receive a separate rate based on the circumstances here.

### A.    Commerce's Determination That Qixin Did Not Rebut The Presumption Of Government Control Is Lawful

Commerce's determination that Qixin failed to rebut the presumption of government control is lawful because Qixin failed to provide the information

---

[5] Because of the requirement to raise objections on remand, it is irrelevant to the exhaustion analysis that Qixin suggested in pre-remand briefing that Commerce could rescind the administrative review if it did not identify a relevant sale by Qixin during the review period. We note, however, that Qixin did not develop this argument, either before Commerce or the trial court, in the manner it now argues before this Court (which would raise additional exhaustion and waiver concerns). *See* Appx658, Appx780-781; *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation and internal quotation marks omitted); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (quoting *Tolbert*).

required by Commerce's separate rate application.  As we explained above, in

antidumping duty proceedings involving non-market economy countries, such as

China, Commerce applies a rebuttable presumption that all companies within the

country are subject to government control.  *See, e.g.*, *China Mfrs. Alliance*, 1 F.4th

at 1039; *Sigma*, 117 F.3d at 1405-06.  Under this presumption, an exporter receives

the non-market economy country-wide rate unless it demonstrates an absence of

government control, both in law (*de jure*) and in fact (*de facto*), with respect to

exports.  *E.g.*, *Diamond Sawblades*, 866 F.3d at 1310–11.  The exporter bears the

burden of rebutting this presumption.  *Id.*

Hence, Commerce's initiation notice in this case notified parties that they

must complete and submit a separate rate application or certification to qualify for

separate rate status and that Commerce would assign exporters the country-wide

rate "unless" they demonstrated entitlement to a separate rate.  *Initiation Notice*, 81

Fed. Reg. at 6,834.  Further, Commerce's separate rate application in this case

notified Qixin and other respondents that "an exporter cannot obtain a separate rate

without providing {Commerce} the relevant U.S. Customs 7501 Entry Summary

for a suspended entry."  Appx118; *see* Appx960, Appx962 (quoting application).

Commerce provided Qixin with four opportunities spanning some three

years to establish that it had a suspended entry of a sale of subject merchandise for

the period of review.  Appx962.  These included: (1) Qixin's original separate rate

application (Appx117-118, Appx959); (2) Qixin's response to Commerce's supplemental separate rate questionnaire seeking support for Qixin's assertion that it had a suspended entry (Appx559-584, Appx959-960); (3) Qixin's response to Commerce's second supplemental separate rate questionnaire again seeking such support (Appx585-600, Appx960); and (4) following the trial court's remand, Qixin's response to Commerce's remand separate rate questionnaire (Appx899-900, Appx961). Regarding that final opportunity—with Commerce even having re-opened the record for the issue—Qixin declined to provide further information and suggested that Commerce contact CBP. *See* Appx 901-903. Because Qixin did not provide Commerce with the required information through any of these opportunities, Commerce determined that Qixin had failed to rebut the presumption of government control. *See* Appx761-763, Appx959-963.

Under these circumstances, Commerce acted lawfully. The initiation notice and separate rate application on the record make clear that identifying a suspended entry of subject merchandise for Commerce to review was required for Qixin to demonstrate entitlement to a separate rate, and that Commerce would otherwise assign Qixin the NME country-wide rate. *See* Appx118; *Initiation Notice*, 81 Fed. Reg. at 6,834; *cf. Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 80 Fed. Reg. 55,328, 55,331 (Dep't of Commerce Sept. 15, 2015), and accompanying IDM at Cmt. 12 (*Shrimp from Vietnam*) (denying separate rate and

assigning NME rate when company failed to establish sale supporting separate rate application).  This Court has consistently sustained Commerce's application of the presumption of government control when a company failed to rebut it.  *See China Mfrs. Alliance*, 1 F.4th at 1039; *Diamond Sawblades*, 866 F.3d at 1310–11.  As the trial court correctly held, Qixin "failed to provide Commerce with the information it requested" to demonstrate Qixin's entitlement to a separate rate.  *Canadian Solar III*, 415 F. Supp. 3d at 1335.  Thus, Commerce lawfully applied the country-wide rate to Qixin upon determining that Qixin failed to rebut the presumption of government control by demonstrating its eligibility for a separate rate.

### B.    Qixin's Arguments That Commerce Should Have Rescinded The Administrative Review With Respect To Qixin Lack Merit

Qixin incorrectly claims that Commerce was required to rescind the administrative review with respect to Qixin (and consequently assign Qixin a separate rate based on the results of a previous review) if Commerce determined that Qixin had not demonstrated that it made a sale of subject merchandise to the United States during the review period.  *See* Qixin Br. 29-36.  As an initial matter, Qixin consistently argued to Commerce that it sold subject merchandise during the period of review.  *See* Appx568, Appx595, Appx653.  Although Qixin stated in its case brief that "{i}f {Commerce} intended to rescind the review of Qixin, it must state this and issue instructions to CBP that exports of subject merchandise of Qixin . . . are to be liquidated according to the rate previously determined for

{Qixin}," Qixin never affirmatively requested that Commerce rescind the review. Appx658. Rather, Qixin contended that Commerce must clarify its finding. *Id.*

Qixin now argues that Commerce's determination—that Qixin failed to demonstrate in connection with its separate rate request that it had any entries of subject merchandise during the review period—should have resulted in Commerce rescinding its review of Qixin, rather than denying a separate rate. Qixin Br. 29. In doing so, Qixin relies upon 19 C.F.R. § 351.213(d)(3), which states that Commerce "*may* rescind an administrative review . . . if {it} concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be." *Id.* (emphasis added). Leaving aside that Qixin has failed to preserve this argument, the argument is not persuasive.

First, Commerce addressed the possibility of rescinding its review of Qixin in its final results and determined that it was not proper to do so just because Qixin had failed to identify an entry providing a basis to grant Qixin a separate rate. *See* Appx762-763. Commerce "*may* rescind an administrative review" if it concludes that a company made no sales of subject merchandise to the United States during the review period. 19 C.F.R. § 351.213(d)(3) (emphasis added). The regulation's use of the permissive term "may" means that Commerce is not required to rescind a review in such circumstances and has discretion in making its determination. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (noting that

32

use of "may" implies discretion). As Commerce found, Qixin submitted a separate rate application, but did not include evidence of a suspended entry of subject merchandise, such that treating Qixin as part of the China-wide entity rather than rescinding the review was the appropriate course. *See* Appx762-763.

Indeed, Commerce typically requires a party to submit a timely statement of no shipments before it will rescind its review of a respondent. *See*, *e.g.*, *Initiation Notice*, 81 Fed. Reg. at 6,832 (stating that deadline for parties to notify Commerce that they had no exports, sales, or entries during the period of review was 30 days after publication of the initiation notice in the Federal Register); *Stainless Steel Sheet and Strip Coils from Taiwan*, 75 Fed. Reg. 76,700 (Dep't of Commerce Dec. 9, 2010), and accompanying IDM at Cmt. (declining to rescind review based on allegation of no entries when party did not make timely notification).

Qixin repeatedly alleged that the documents it provided were, in fact, evidence that it had at least one entry of subject merchandise during the period of review. *See* Appx568, Appx595, Appx653. Nor did Qixin file a timely statement within 30 days of initiation notifying Commerce that it did not have such entries. As a consequence, Commerce found it was not appropriate to rescind the review (which would have benefitted Qixin). *Cf. Stainless Steel Sheet and Strip Coils from Taiwan*, 75 Fed. Reg. 76,700 at IDM Cmt. ("{T}he Department is not required to make an affirmative finding of shipments in order to maintain a review

with respect to a given respondent; rather, the evidentiary burden is on the non-selected respondent to certify that it had no {period of review} shipments or otherwise demonstrate that it had no reviewable transactions during the review period.").

Qixin also argues that "{t}he presence or absence of a suspended entry is essentially a jurisdictional hurdle that the Department must clear in order for a review to lawfully be conducted." Qixin Br. 29. Relatedly, Qixin cites *Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1372 (Fed. Cir. 2003), for the proposition that Commerce cannot conduct a review if there is nothing to review. *See* Qixin Br. 30. *Allegheny Ludlum*, however, concerned circumstances in which Commerce rescinded an overall review under its regulations upon determining affirmatively that the potential respondents did not have any relevant entries. *See* 346 F.3d at 1370.[6] It did not address circumstances involving issues unique to non-market economy reviews, such as NME country-wide rates and separate rates. *See Hubell Power Sys., Inc. v. United States*, 884 F. Supp. 2d 1283, 1289 (Ct Int'l Trade 2012) (discussing *Allegheny Ludlum*). Consequently, *Allegheny Ludlum* does not control the issue Commerce confronted here, in which Qixin repeatedly represented that it made period of review sales and did not timely seek rescission,

---

[6] Here, by contrast, Commerce merely determined that Qixin failed to identify a sale of subject merchandise during the review period to support its separate rate application. *See* Appx962-963.

but also did not identify any sales that Commerce could review for purposes of
determining Qixin's eligibility for a separate rate.

Qixin further contends that Commerce must base its separate rate analysis on
"record evidence specific to the question of whether the company is subject to state
control" and "cannot use unrelated deficiency findings on sale and factors of
production issues" because they have "nothing to do with the separate rate analysis
of government control." Qixin Br. 33-34. Similarly, Qixin argues that it was
"logically inconsistent for {Commerce} to apply the PRC-wide rate to Qixin
because this required Qixin to have entries during the {period of review} to which
the PRC-wide rate could be applied." Qixin Br. 35-36. As this Court recently
held, however, "Commerce may permissibly assign {a non-market economy entity
rate} to the unitary group of exporters in {a non-market economy} country that
have failed to rebut the presumption of government control." *China Mfrs. All.*, 1
F.4th at 1039-40. Commerce may do so when "a respondent in an NME country
cooperates with an investigation or review but fails to rebut the presumption of
government control." *Id.* (citing *Diamond Sawblades*, 866 F.3d at 1312-15).

Accordingly, the relevant determination is whether a respondent is able to
rebut the presumption of government control through its separate rate application.
*See Initiation Notice*, 81 Fed. Reg. at 6,834 (notifying parties that they must
complete and submit a separate rate application or certification to qualify for

separate rate status). If the respondent is unable to do so, then it is appropriately

subject to the NME country-wide entity rate. *See id.* (stating that Commerce will

assign exporters NME rate "unless" they demonstrate entitlement to separate rate).

The application requires a company to identify at least one sale that would enable

Commerce to evaluate the company's export activity. Appx118 (separate rate

application instructions stating that "an exporter cannot obtain a separate rate

without providing {Commerce} the relevant U.S. Customs 7501 Entry Summary

for a suspended entry"); Appx960, Appx962 (quoting same). Hence, failure to do

so results in the company receiving the NME rate. *See Shrimp from Vietnam*, 80

Fed. Reg. at 55,331, and accompanying IDM at Cmt. 12 (assigning NME rate

when company failed to establish sale supporting separate rate application).

Moreover, unlike the trial court cases Qixin cites for the proposition that

Commerce cannot rely on unrelated deficiencies to deny a separate rate (Qixin Br.

33-34), the deficiency at issue in this case relates directly to the separate rate

application, meaning that Qixin failed to provide the necessary information to

rebut the presumption of government control. *See* Appx963; *cf. Ad Hoc Shrimp

Trade Action Comm. v. United States*, 802 F.3d 1339, 1356 (Fed. Cir. 2015)

(sustaining Commerce's application of adverse facts available to deny separate rate

status when "the necessary information missing from the record was information supporting Hilltop's claim that it was eligible for a separate rate").[7]

In short, having concluded that Qixin failed to rebut the presumption of government control by demonstrating its eligibility for a separate rate, Commerce did not abuse its discretion by declining to rescind the review for Qixin.

## CONCLUSION

For these reasons, we respectfully request that this Court affirm the trial court's judgment.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General


PATRICIA M. McCARTHY
Director


/s/ Tara K. Hogan
for Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

---

[7] Further, unlike Qixin's cases (and *Ad Hoc Shrimp*), Commerce *did not* rely on adverse facts available to deny Qixin a separate rate. Commerce merely concluded that Qixin's separate rate application and related filings were deficient. *See* Appx959-963 (chronicling separate rate application deficiencies). Authorities concerning the Commerce's previous use of adverse facts available to deny a separate rate do not undermine Commerce's denial of a separate rate here.

OF COUNSEL:                              /s/ Joshua E. Kurland
BRENDAN S. SASLOW                        JOSHUA E. KURLAND
Senior Attorney                          Trial Attorney
Department of Commerce                   U.S. Department of Justice
Office of the Chief Counsel              Civil Division
for Trade Enforcement & Compliance       Commercial Litigation Branch
U.S. Department of Commerce              P.O. Box 480, Ben Franklin Station
                                         Washington, D.C.  20044
                                         Tel: (202) 616-0477
                                         Fax: (202) 353-0461
                                         Email: Joshua.E.Kurland@usdoj.gov


June 30, 2022                            *Attorneys for Defendant-Appellee*
                                         *United States*

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7) and Federal Circuit Rule 32(b), the undersigned certifies that the word processing software used to prepare this brief indicates there are a total of 8,716 words, excluding the portions of the brief identified in the rules.  The brief complies with the typeface requirements and type style requirements of Fed. R. App. P. 32(a)(5) and has been prepared using Times New Roman 14 point font, proportionally spaced typeface.


<u>/s/ Joshua E. Kurland</u>